Michael C. PORCELLINI

v.

STRASSHEIM PRINTING CO., INC.,
et al.

Civ. A. No. 82–3711.

United States District Court,
E.D. Pennsylvania.

Sept. 26, 1983.

Howard J. Casper, Alison F. Soloff, Philadelphia, Pa., for plaintiff.

Jeffrey Cooper, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

VanARTSDALEN, District Judge.

### I. *Introduction*

Michael C. Porcellini, the plaintiff in this action, is a former employee of defendant Strassheim Printing Co., Inc. (Strassheim). He was terminated from his employment at Strassheim on or about July 2, 1981. During his employment at Strassheim, Mr. Porcellini was a participant and a beneficiary of Strassheim's profit-sharing trust and Strassheim's pension trust. In this action, Mr. Porcellini alleges that he made repeated requests for information relating to the amount of money which had accumulated in the respective trusts on his behalf. He contends that the defendants failed and refused to deliver the requested information in violation of the duties and responsibilities imposed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* Mr. Porcellini seeks to recover under Section 1132(c) of ERISA which permits a court, in its discretion, to award a statutory penalty of up to $100.00 per day against a plan administrator who fails or refuses to comply with a request for information which the administrator is required under ERISA to produce. Upon consideration of the testimony and the exhibits presented at trial, I make the following findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a).

### II. *Findings of Fact*

1. Michael C. Porcellini was employed at Strassheim Printing Co., Inc., for approximately eighteen years. Strassheim is a small, family-owned, printing business. Mr. Porcellini was the most senior, non-family member in a management position.

2. William G. Strassheim is the former president of the company. In June of 1978, Mr. Strassheim's son, Ronald G. Strassheim, became active in the company's management and operation. By December of 1978 or January of 1979, Ronald G. Strassheim was running the entire business and William G. Strassheim was no longer actively involved in the daily decision-making. Ronald G. Strassheim was involved in an automobile accident in March of 1980 and his father resumed the company's management until December of 1980 when Ronald G. Strassheim returned to his job. Ronald G. Strassheim is currently the company's president.

3. William G. Strassheim has continued to work for the company on a part-time basis working primarily at home and making only occasional visits to the company's premises. He maintains an office in his home in which he does some type-setting and some work with a home computer.

4. Mr. Porcellini was terminated by Ronald G. Strassheim on or about July 2, 1981.

5. Strassheim instituted two employee benefit plans during the course of Mr. Porcellini's employment. The Strassheim Printing Company Employee's Pension Trust is a non-contributory single employer pension trust initiated in September of 1973 and restated and amended in compliance with ERISA in September of 1976. The Strassheim Printing Company Profit-Sharing Trust is a non-contributory single employer profit-sharing trust initiated in January of 1976. Mr. Porcellini was a participant and a beneficiary of both plans.

6. Strassheim Printing Co., Inc., is now, and has always been, the administrator of the Strassheim pension trust. William G. Strassheim is the former administrator of the Strassheim profit-sharing trust. At some point in 1978, the administrator of the profit-sharing trust was changed from William G. Strassheim to Ronald G. Strassh-

eim. The summary annual report for the Strassheim profit-sharing plan for January 1, 1978 to December 31, 1978, identifies Ronald G. Strassheim as the plan administrator. However, an employer information sheet for the Strassheim profit-sharing trust, signed by William G. Strassheim on January 31, 1978, identifies William G. Strassheim as the administrator of the Strassheim profit-sharing trust. *Compare* plaintiff's Exhibit No. 2 (last three pages). Ronald G. Strassheim was unaware that he was the plan administrator for the Strassheim profit-sharing trust until the time of trial of this action.

7. Plaintiff's Exhibit No. 1 is a summary plan description of the Strassheim profit-sharing trust. Plaintiff's Exhibit No. 2 is a summary plan description of the Strassheim pension trust. Mr. Porcellini received summary plan descriptions at or about the time that the plans were initiated.

8. The professional administrator of both trusts is R.E.G. Estate Planning Associates (R.E.G.). Prior to the initiation of the respective employee benefit trusts, Robert Gladden of R.E.G. met and discussed the plans with William G. Strassheim, who at the time was Strassheim's president. Mr. Gladden also discussed the nature and the significance of the plans with Mr. Porcellini on several occasions. Copies of the plan documents for the pension trust and the profit-sharing trust, as well as the annual reports for each trust, were on file at the office of R.E.G. at all relevant times.

9. When the plan administrator of the profit-sharing trust was changed from William G. Strassheim to Ronald G. Strassheim, Mr. Gladden sent a notification of the change to the Strassheim Printing Company, Inc. Mr. Porcellini did not receive said notice.

10. Mr. Porcellini was concerned about the amount of money which had accrued in his profit-sharing and pension plans. In the fall of 1980, he made an *oral* request to William G. Strassheim as to the amount of money which had inured to his benefit. He received no explanation or response. Mr. Strassheim did not inform Mr. Porcellini that his son, Ronald G. Strassheim, was the plan administrator of the profit-sharing trust and that questions regarding the profit-sharing trust should be made in writing to him or to R.E.G.

11. Subsequent to his termination, Mr. Porcellini made an *oral* request to Ronald G. Strassheim for information concerning the amount of money which had accumulated in his profit-sharing trust and in his pension trust. Mr. Porcellini received no information from Ronald G. Strassheim as a result of that request.

12. In August of 1981, Mr. Porcellini met with Mr. Gladden of R.E.G. The purpose of the meeting was to discuss with Mr. Gladden the various options available to Mr. Porcellini upon Mr. Porcellini's receipt of the accrued funds in the pension and profit-sharing trusts. Mr. Gladden did a "work-up" of the approximate amount of benefits that Mr. Porcellini could expect to receive. Mr. Gladden showed Mr. Porcellini the calculations from the insurance company that was involved in the investment of the funds, but was unable to give Mr. Porcellini the exact amounts which he could expect because the final contributions from the Strassheim company had not yet been received. Mr. Gladden and Mr. Porcellini discussed the possibility of "rolling-over" the trust funds but Mr. Porcellini did not make a final decision at that time.

13. Although Mr. Porcellini wanted verification of the figures used by Mr. Gladden to compute the anticipated trust fund benefits, Mr. Porcellini did not make such a request to Mr. Gladden at the August, 1981 meeting, either orally or in writing. No request was made by Mr. Porcellini at that meeting for the trust documents or the annual reports.

14. Mr. Porcellini met with Mr. Gladden again in October of 1981 to sign the necessary surrender papers which would enable him to obtain the funds being held in the pension and profit-sharing trusts. Mr. Porcellini made no request at the October, 1981 meeting for information from Mr. Gladden, such as the trust documents or

annual reports, to enable him to verify the amounts which Mr. Gladden informed him he would be receiving.

15. Since Mr. Porcellini received no response as a result of his oral requests to William Strassheim or Ronald G. Strassheim for information which would have enabled him to verify the amount of money withheld on his behalf in the pension and profit-sharing trusts, Mr. Porcellini contacted the United States Department of Labor for assistance in obtaining this information. The Department of Labor was unable to provide assistance to Mr. Porcellini.

16. In December of 1981, Mr. Porcellini employed legal counsel in order to obtain the funds withheld in the pension and profit-sharing trusts and to obtain information which would enable him to verify the amounts withheld.

17. On December 9, 1981, Howard J. Casper, Esquire, as counsel for Mr. Porcellini, wrote to William G. Strassheim demanding immediate payment of the benefits under both the pension and profit-sharing trusts. Mr. Casper further requested copies of the trust documents for both plans, copies of the plans themselves and the most recent copies of the Form 5500 which are the annual reports submitted to the government. The letter further stated, "We would appreciate hearing from you as plan administrator concerning all of the above immediately." The letter was addressed to William G. Strassheim at the Strassheim company address.

18. At the time this letter was written, Ronald G. Strassheim was the plan administrator of the Strassheim profit-sharing trust. The administrator of the Strassheim pension trust at this time was Strassheim Printing Co., Inc. William G. Strassheim was an employee of Strassheim at this time, although Ronald G. Strassheim was running the business.

19. William G. Strassheim received the letter which was sent by Mr. Casper to the Strassheim company office. Mr. Strassheim read the letter and referred it to Mr. Gladden of R.E.G. Mr. Strassheim did not give his son Ronald G. Strassheim a copy of the letter from Mr. Casper. Mr. Strassheim did not know what the documents were which were requested in the letter.

20. On December 23, 1981, Margery Christman, an employee of R.E.G., wrote to Mr. Porcellini and enclosed with that letter copies of the summary plan descriptions for the pension trust and the profit-sharing trust. A copy of that letter was sent to William G. Strassheim. The letter from Margery Christman to Michael C. Porcellini did not include copies of the trust documents, the plans or the annual reports.

21. On December 31, 1981, Mr. Casper wrote to Margery Christman at R.E.G. advising that Mr. Porcellini was represented by counsel. Mr. Casper requested once again copies of the respective trust documents and plans with the particular sections, articles or paragraphs referred to in the summary plan descriptions.

22. On January 4, 1982, Margery Christman wrote to Mr. Casper to apologize for contacting Mr. Porcellini directly instead of communicating with Mr. Casper, who was counsel for Mr. Porcellini. Ms. Christman explained that she was unaware that Mr. Porcellini was represented by counsel. Ms. Christman informed Mr. Casper that copies of various documents and surrender forms relating to the Strassheim pension and profit-sharing trusts had been forwarded on to "Mr. Strassheim as trustee of these plans." Ms. Christman requested that further communications concerning the plans be directed to Mr. Strassheim. A copy of this letter was sent to William G. Strassheim.

23. On the same day, January 4, 1982, Margery Christman forwarded to William G. Strassheim the copies of the surrender forms and other documents requested by Mr. Porcellini's counsel. This letter included copies of the plan description and the trust agreement for each of the Strassheim trusts. The letter was sent to Mr. Strassheim at the Strassheim company address.

24. Upon receipt of the surrender forms and other documents from Margery Christ-

man, Mr. Strassheim forwarded the information, not to Mr. Porcellini's counsel, but to Mr. Porcellini directly. Mr. Strassheim mailed the information, without a cover letter, from his home. Mr. Porcellini never received that information.

25. On January 8, 1982, plaintiff received a check from the pension trust in the amount of $802.18. On February 12, 1982, Mr. Porcellini received the check in the amount of $10,382.44 from the profit-sharing trust. Mr. Porcellini did not immediately cash these checks because he still did not have the necessary documentation to enable him to verify that the amounts paid were accurate. The check for $802.18 from the pension trust was signed by "William Strassheim." William E. Strassheim was a trustee of the pension trust, but there was no evidence as to whether the signature on that check was William E. Strassheim's or William G. Strassheim's.

26. In March of 1982, Mr. Porcellini contacted Mr. Gladden on a matter unrelated to the Strassheim company. During the course of the conversation with Mr. Gladden, the Strassheim matter was raised and Mr. Porcellini informed Mr. Gladden that he had not received the documentation which would enable him to verify the checks he received were accurate.

27. On March 23, 1983, Margery Christman wrote to Mr. Porcellini to verify the amounts of the checks. Ms. Christman understood Mr. Porcellini's request as only seeking confirmation of the amounts stated on the checks and not as a request for the plan documents or annual reports.

28. On April 8, 1982, Mr. Porcellini's counsel wrote to William G. Strassheim advising him that Mr. Porcellini had received three checks drawn by the Strassheim pension trust but that no information which would permit verification of the checks had been provided. Mr. Porcellini's counsel further advised Mr. Strassheim that the checks would be treated as partial payment of the funds due Mr. Porcellini until the requested information had been provided to permit verification. A copy of this letter was sent to R.E.G.

29. On July 1, 1982, Margery Christman forwarded to Mr. Porcellini's counsel copies of the adoption agreements for both the pension trust and the profit-sharing trust, as well as summary plan descriptions, annual financial or valuation statements and copies of the letters accompanying the distribution checks sent to Mr. Porcellini. Based upon this information, counsel for Mr. Porcellini was able to determine that the amounts received by Mr. Porcellini in distribution from the respective trusts were accurate.

30. On August 24, 1982, Mr. Porcellini filed this action to recover the statutory penalty provided under ERISA based upon the alleged failure and/or refusal to deliver the documents requested by Mr. Porcellini as well as attorney's fees provided for under ERISA. There is no claim that Mr. Porcellini did not receive the proper amounts to which he was entitled from either trust.

31. Mr. Porcellini's termination from Strassheim, a company with whom he had been employed for eighteen years and had expected to make his lifetime career, caused him enormous emotional and psychological stress. He had a great deal of uncertainty as to selecting a new career and he was concerned about providing for his future and his family's future. He consulted a medical doctor because of his sleeplessness, loss of weight and irritability. His doctor recommended a psychologist who treated Mr. Porcellini for approximately one year. He also visited a psychiatrist who prescribed sleeping pills and an anti-depressant medication.

32. Mr. Porcellini's inability to obtain verification of his pension or profit-sharing trust accounts contributed to his anxiety but was not the sole or predominant reason for his psychological problems. Although Mr. Porcellini mentioned this concern to Dr. Barton Knapp, his psychologist, his major concern revolved around the loss of his job and the uncertainty of his future.

33. Mr. Porcellini's inability to verify the amounts of his pension and profit-shar-

ing trust withholdings affected his decision-making in considering certain business prospects subsequent to his termination from Strassheim.

34. Plaintiff is presently employed as a printing salesman working on a commission of ten (10%) percent of the gross sales. In 1982, Mr. Porcellini had gross sales of approximately $275,000.00.

35. At no time relevant to this action was defendant William E. Strassheim the administrator of either the Strassheim pension trust or the Strassheim profit-sharing trust. However, William E. Strassheim was a trustee of both trusts.

III. *Discussion*

■ At the time this action was commenced, Mr. Porcellini had already received the amounts to which he was entitled from both the Strassheim pension trust and the Strassheim profit-sharing trust. He had also received the necessary documentation to enable him to verify that the amounts were accurate. These amounts were in fact correct and are not at issue in the present action. Mr. Porcellini filed this action to recover under the statutory penalty provisions of ERISA. Section 1132(c) provides that:

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c). Mr. Porcellini contends that the plan administrators of the pension trust and the profit-sharing trust failed or refused to comply with his request for information which the plan administra-

tors were required to provide under 29 U.S.C. §§ 1024 & 1025.

Section 1024 of ERISA provides that publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the plans within ninety (90) days after such person becomes a participant, or in the case of a beneficiary, within ninety (90) days after such person first receives benefits. *See* 29 U.S.C. § 1024(b)(1)(A). This section also requires the administrator to furnish each beneficiary and/or participant a copy of all modifications and changes referred to in Section 1022(a)(1) of ERISA. Section 1022(a)(1) of ERISA encompasses a change in the name and address of the plan administrator. Additionally, Section 1024(b)(4) states that:

> The administrator shall, *upon written request* of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated....

29 U.S.C. § 1024(b)(4) (emphasis added). Section 1025(a) of ERISA requires that:

> Each administrator of an employee pension benefit plan shall furnish to any plan participant or beneficiary *who so requests in writing*, a statement indicating, on the basis of the latest available information—
>
> (1) the total benefits accrued, and
>
> (2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.

29 U.S.C. § 1025(a) (emphasis added).

At the outset, the defendants contend that the statutory penalty provided under § 1132(c) is inapplicable in this action because the plaintiff's have failed to prove any violation of ERISA. The defendants do not dispute that ERISA imposes a duty to furnish certain information to a participant or beneficiary of a plan. It is the

defendants' position that Mr. Porcellini failed to comply with the statute's requirement that requests for such information be made *in writing* and directed to the *plan administrator.* I find that the plaintiff has proven by a preponderance of the evidence that, at least as to the pension trust, a request was properly made in writing to the plan administrator in accordance with the statute.[1]

It is clear that up until December of 1981, Mr. Porcellini had merely made *oral* requests to both William G. Strassheim and Ronald G. Strassheim for a statement indicating the total benefits accrued in his pension and profit-sharing trusts and the documents which would enable him to verify those amounts. Although neither of the summary plan descriptions for the pension and/or profit-sharing trusts requires requests for information from the plan administrator to be made in writing, this requirement is expressly provided in the statute. Since plaintiff is invoking the punitive sanctions of ERISA for technical violations of the statute, he must establish that he has complied with the statutory prerequisites.

The first written request for information to which Mr. Porcellini was plainly entitled under 29 U.S.C. §§ 1024(b) & 1025(a) was made by Mr. Porcellini's counsel on December 9, 1981. The defendants contend that this request does not trigger the penalty provisions because the request was not directed to the plan administrator in accordance with the statute.

The plan administrator is the person specifically so designated by the terms of the instrument under which the plan is operated. 29 U.S.C. § 1002(16)(A)(i). The plan documents for the Strassheim pension trust designate Strassheim Printing Co., Inc., as the administrator of that plan. The statute does not prohibit the designation of a corporate entity as a plan administrator and there is no contention that this was improper. The defendants argue that although the December 9, 1981, letter from Mr. Porcellini's counsel was directed to the business address of Strassheim Printing Co., Inc., at 305 North 15th Street, Philadelphia, Pennsylvania 19102, the letter itself was addressed to Mr. William G. Strassheim. It is the defendants' position that William G. Strassheim was no longer an employee of the company at that time. Therefore, according to the defendants, the letter addressed to Mr. William G. Strassheim cannot be deemed a written request to the administrator of the pension trust of Strassheim Printing Co., Inc.

The defendants' contention that William G. Strassheim was not an employee of the company as of December 9, 1981, is not borne out by the facts presented. It appears that in late 1978 or early 1979, Ronald G. Strassheim took over the reigns of the corporation from his father, to the extent that he managed the day-to-day operations of the printing business. However, William G. Strassheim remained involved in the company's affairs although he con-

1. The evidence clearly disclosed that a written request for the information sought by the plaintiff was never made to Ronald G. Strassheim. This is understandable since neither the plaintiff, nor Ronald G. Strassheim himself, was aware that the administrator of the profit-sharing trust had been changed from William G. Strassheim to Ronald G. Strassheim. Although the 1978 annual report identifies Ronald G. Strassheim as the plan administrator, *notice of the change* in plan administrators in and of itself was never sent to Mr. Porcellini. Apparently, notice of change was sent by R.E.G. directly to the Strassheim company but the plaintiff never was advised of this change. The failure to notify Mr. Porcellini of this change is a violation of Section 1024(b)'s requirement that each beneficiary and/or participant be given a

copy of all modifications and changes in the plan. *See* 29 U.S.C. § 1022(a)(1). Plaintiff persuasively argues that the defendants should be estopped from asserting that Ronald G. Strassheim was the plan administrator because of the failure to advise Mr. Porcellini of this change. Although I believe the plaintiff is correct in this contention, this determination is essentially academic. It is clear that the request made to William G. Strassheim was proper as to information regarding the pension trust. Thus, Strassheim Printing Co., Inc., had a duty to furnish the requested information within the statutory thirty-day period. The request was addressed to William G. Strassheim, who was then an employee of the Strassheim Printing Co., Inc., the administrator of the pension trust. *See, infra.*

sidered himself semi-retired. He worked at home and made occasional visits to the company's office. It is apparent that Margery Christman of R.E.G. considered William G. Strassheim to be active in the business subsequent to December of 1981. In her letter to William G. Strassheim of January 4, 1982, sent to the company's address, she states:

> As per your conversation with Mr. Gladden, I am forwarding to you copies of the surrender forms and documents requested from us by Mr. Howard Casper, Mike's lawyer.

The information requested by Mr. Porcellini's counsel was forwarded to William G. Strassheim and not to Ronald G. Strassheim. The evidence sufficiently establishes that although William G. Strassheim had become less active in the daily operation of this small, family-owned printing business, he nevertheless remained involved with the company and was treated as such by others. I find that the letter from Mr. Porcellini's counsel to William G. Strassheim was a proper request to the plan administrator of the pension trust of Strassheim Printing Co., Inc., for purposes of Section 1132(c).

According to the testimony presented, Margery Christman ultimately forwarded the documents requested by Mr. Porcellini's counsel to William G. Strassheim. At this juncture, there is a critical factual issue. Mr. Strassheim testified that upon receipt of these documents from R.E.G., he placed them in an envelope and forwarded them to Mr. Porcellini without a cover letter. Mr. Porcellini testified that he never received the documents sent by Mr. Strassheim.

If Mr. Strassheim's testimony is accepted as true, then the statute's requirement that the material requested must be mailed to the last known address of the requesting participant or beneficiary within thirty (30) days of a written request to the administrator would have been satisfied. The statute does not require such materials to be sent by registered or certified mail although such a practice might represent a preferable procedure. However, the mere fact

that Mr. Porcellini did not receive the documents does not lead to the conclusion that Mr. Strassheim was not being truthful in testifying that he in fact mailed them. Although the plaintiff has presented evidence which would place Mr. Strassheim's credibility in doubt, I nevertheless conclude that Mr. Strassheim was being truthful in his testimony that he immediately forwarded the documents to Mr. Porcellini. There is certainly no evidence that he had any reason at that time to withhold the documents and there was no testimony as to any ill-will or animosity between Mr. Porcellini and William G. Strassheim, notwithstanding that Mr. Porcellini had been discharged from the company by the son, Ronald G. Strassheim. Therefore, I find that although Mr. Porcellini made a written request to the plan administrator in accordance with Sections 1024(b)(4) and 1025(a), Mr. Strassheim complied with the statute's requirement of responding to the written request within thirty (30) days thereof.

My conclusion that Mr. Strassheim mailed the requested material to Mr. Porcellini does not, however, resolve the issue. On April 2, 1982, plaintiff's counsel again wrote to Mr. Strassheim. It is clear from this letter that Mr. Porcellini had not received the documents which Mr. Strassheim testified he forwarded to Mr. Porcellini. This letter, once again, constituted a proper request in accordance with Section 1132(c). Nevertheless, counsel for Mr. Porcellini did not receive the requested documents until on or about July 1, 1982, almost three months after the request had been renewed to William G. Strassheim. Therefore, the plaintiff has established a violation of the statute: (1) there was a written request; (2) the request was made to the administrator; (3) and the administrator failed to respond to that request within thirty (30) days thereof.

■ My finding that there has been a technical violation of Section 1132(c) presents the difficult question of whether I should penalize the plan administrator, Strassheim Printing Co., Inc., for its failure to provide Mr. Porcellini with the informa-

tion he requested within the statutory thirty (30) day time period. Section 1132(c) provides that the court *in its discretion* may award a penalty of up to $100.00 a day from the date of such failure or refusal.

The defendants argue that even if a technical violation is established, Mr. Porcellini has not been prejudiced thereby. He received all of the money to which he·was entitled and he received the documents to enable him to verify that the sums received were accurate. The plaintiff contends (1) that the statute does not require a showing of prejudice; and (2) that even if a showing of prejudice is required, Mr. Porcellini has proven that he has been prejudiced both personally, in the form of emotional distress, and financially, in the form of lost business opportunities because of his inability to verify the amounts to be refunded from the respective trusts.

Although the legislative history of ERISA is extensive, Congress' collective cogitations on this particular provision of ERISA are scant. Under the bill as originally passed by the House of Representatives, if a plan administrator failed or refused to furnish a participant or beneficiary with a copy of the latest annual report or such other information required to be furnished under ERISA, within thirty (30) days after a request, the administrator was to be personally liable to the participant or beneficiary for up to $50.00 a day from the date of the failure. H.R.Conf.Rep. No. 1280, 93 Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad.News 4639, 5038, 5106. This provision appears to track a comparable provision in a predecessor to ERISA, the Welfare & Pension Plans Disclosure Act of 1958, as amended, Pub.L. No. 85–836, 72 Stat. 997 (repealed effective January 1, 1975). *See Golden v. Kentile Floors, Inc.,* 512 F.2d 838 (5th Cir.1975). The bill as passed by the Senate contained no comparable penalty provision. Under the conference agreement, the statute as ultimately adopted provided that the administrator may be personally liable for up to $100.00 per day. However, the circumstances upon which this liability may be imposed have been left entirely to the discretion of the courts.

Whether prejudice is a prerequisite to an award of Section 1132(c)'s statutory penalty has not been directly addressed in any reported decision. However, several courts which have considered whether to award damages under Section 1132(c) have focused upon whether the plaintiff has been harmed by the administrator's statutory violation. In *Wesley v. Monsanto Co.,* 554 F.Supp. 93, 97–98 (E.D.Mo.1982), the district court denied an award of damages under Section 1132(c) finding that the plaintiff had made no showing of prejudice by reason of the defendant's failure to furnish a copy of certain documents. The decision of the district court was affirmed by the Eighth Circuit Court of Appeals. *Wesley v. Monsanto Co.,* 710 F.2d 490, 491 (8th Cir.1983) (award of damages under Section 1132(c) is discretionary—no abuse of discretion). In *Shlomchik v. Retirement Plan of the Amalgamated Insurance Fund,* 502 F.Supp. 240 (E.D.Pa.1980), *aff'd mem.,* 671 F.2d 496 (3d Cir.1981), an award of damages under Section 1132(c) was denied where there was "no indication that plaintiff's rights under the Plan or ERISA [had] been prejudiced by the failure of the administrator to provide the Plan within the statutorily prescribed ·period." 502 F.Supp. at 245 (*citing Pollock v. Castrovinci,* 476 F.Supp. 606 (S.D.N.Y.1979), *aff'd mem.,* 622 F.2d 575 (2d Cir.1980)). Similarly, in *Adams v. Western Conference of Teamsters Pension Plan,* 484 F.Supp. 933, 935 (D.Utah 1979), an award of damages under Section 1132(c) was denied because the plaintiff had not been harmed.

Although I agree that the harm to a plan participant or beneficiary is a proper matter for a court to consider in awarding damages under Section 1132(c), I part company with the above cited decisions to the extent that they suggest that a plaintiff *must* show prejudice in order to permit an award of damages. The statutory award under section 1132(c) is clearly punitive in nature. It is not intended to compensate a plan participant for injuries suffered as a result of an administrator's wrongful re-

fusal or failure to provide documents which a participant or beneficiary is entitled to under ERISA. The statutory penalty provision was ostensibly intended to induce or compel compliance with the full disclosure principles which are embodied in ERISA. The desire to compel disclosure and otherwise safeguard the establishment, operation and administration of employee benefit plans is fundamental to the statute. *See* 29 U.S.C. § 1001 (Congressional findings and declaration of policy).

Since the penalty provisions of Section 1132(c) are aimed at inducing administrators to comply promptly with requests for information about the plan, the primary focus of a court in assessing damages under that section should be the conduct of the administrator upon whom the liability is personally imposed. If a plan administrator in good faith is unable to comply with a request for information within the thirty (30) day period, the assessment of the statutory penalty would not further the statute's purpose. However, if an administrator intentionally withholds information, for whatever reason, where a proper request has been made, the assessment of the statutory penalty would be appropriate even though the participant or beneficiary cannot show prejudice arising therefrom. Where the delay in furnishing requested information is the result of neglect or misfeasance, then a court might consider an award of damages less severe than the statutory maximum of $100.00 per day. Thus, an administrator who violates the express obligations imposed by the statute should not be able to escape the statutory penalty merely because the plaintiff cannot prove harm.

Under this rationale, I believe that an award of some penalty damages under the present facts is appropriate. Although I do not find that William G. Strassheim intentionally withheld the requested documents from Mr. Porcellini, I do find that Mr. Strassheim and the corporation were completely indifferent to Mr. Porcellini's desire to obtain verification of the amounts received from the respective trusts. There is simply no excuse for a delay of almost three months, from the request of April 2, 1982, to the response of July 1, 1982, in furnishing Mr. Porcellini with the documents requested. Mr. Strassheim knew what documents were desired but procrastinated in responding to the request. Therefore, I will award damages of twenty-five ($25.00) dollars per day from May 2, 1982, which is the time within which Mr. Strassheim was obligated to respond, and July 1, 1982, which is the time Mr. Porcellini, through his counsel, actually received the documents. *See Le Febre v. Westinghouse Electric Corp.*, 549 F.Supp. 1021, 1028 (D.Md.1982) (administrator fined $100.00 per day for each day beyond the first thirty days).

Even if a showing of prejudice were a prerequisite to an award of statutory damages under Section 1132(c), the evidence in this action is sufficient to establish that Mr. Porcellini was harmed by the failure to promptly reply to his requests. First, Mr. Porcellini testified that he passed up at least two business opportunities because of his uncertainty as to the exact amount of money that would be refunded from his pension and profit-sharing trusts. Ultimately, Mr. Porcellini "rolled-over" the amounts received into an individual retirement account but he apparently gave strong consideration to certain business ventures which involved an investment of capital. Whether Mr. Porcellini would have actually pursued any of these opportunities had his pension and profit-sharing sums been verified is not of consequence. There is no evidence to refute his contention that these opportunities were viable but that, without knowing exactly how much he had coming to him, the more prudent course was to await verification. In addition to this alleged financial harm, Mr. Porcellini testified, over the objection of counsel,[2] to emotional and/or psychological

**2.** The defendants argued that this evidence was not relevant to the assessment of damages un-

der Section 1132(c). Defendants contended that the plaintiff had to show prejudice to his rights

harm which he suffered allegedly because of the defendants failure to furnish the requested documents. Although I believe that the primary source of Mr. Porcellini's emotional distress and psychological problems was the loss of his job and the prospect of starting a new career at his age, I have no doubt that his concern about his pension and profit-sharing trusts contributed to his anxiety and was aggravated by the failure of the administrator to provide information. Mr. Porcellini was greatly concerned about his future and his ability to provide for himself and his wife. Obviously, the amount of money which had accumulated in his pension and profit-sharing trusts was important to him. The fact that the defendants' conduct precluded Mr. Porcellini from promptly verifying this amount is an appropriate matter to consider in the assessment of the statutory penalty.

█ Finally, the plaintiff has requested an award of attorney's fees. The statute expressly provides that, "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court *in its discretion* may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g) (emphasis added). The defendants object to the award of attorney's fees, in the event that the plaintiff is successful on the merits, primarily on two grounds. First, they argue that there is no evidence of any intent to deprive Mr. Porcellini of the information he requested or to prevent him from receiving all of the benefits to which he was entitled. Second, they argue that the only apparent purpose for filing this action was to obtain a windfall for Mr. Porcellini, since the complaint was filed after Mr. Porcellini had received all the benefits to which he was entitled and all of the documents which he requested.

The award of attorney's fees under Section 1132(g) is discretionary. In the exercise of the court's discretion under Section 1132(g), several factors have been enumerated as proper matters for the court's consideration. These include:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing party [sic] would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069, 1073 (9th Cir.1983) (*quoting Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980); *See also, Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980); *Eaves v. Penn*, 587 F.2d 453, 465 (10th Cir.1978).

Upon consideration of these elements in view of the facts presented in this case, it is my conclusion that an award of attorney's fees is proper. The first factor, the degree of culpability, goes to the defendants' contention that there was no evidence that the documents were intentionally withheld from Mr. Porcellini. Although I agree that there was no evidence of intentional conduct, I find that the inordinate delay in producing the requested documents was inexcusable. William G. Strassheim knew what documents were being requested and simply ignored that request. This may not have been done in bad faith, but it certainly suggests that Mr. Strassheim gave a low priority to Mr. Porcellini's request. Therefore, I conclude that this factor weighs in favor of an award of attorney's fees.

Another factor which weighs in favor of the award of attorney's fees is the deterrent effect of such an award. Clearly, an

---

under ERISA. In view of my conclusion that prejudice to the participant or beneficiary is not a prerequisite to an award under Section 1132(c), this issue is largely moot. However, to the extent that prejudice is required, I conclude

that a court in its discretion may properly consider any emotional or psychological harm to a participant or beneficiary in exercising its discretion in determining the *amount* of the award.

award of attorney's fees in this action will serve to emphasize the importance of the administrator's prompt response to a request for information to which plan participants and beneficiaries are entitled. An administrator should not be permitted to blithely ignore a proper request for documents until legal counsel has been obtained to secure enforcement of the right to that information. The award of attorney's fees under these circumstances is consistent with ERISA's requirements of full and complete disclosure to plan participants and beneficiaries and will discourage administrators from disregarding the statutory scheme designed to effectuate those goals.

The defendants emphasize that this action was commenced after Mr. Porcellini had received his benefits and the relevant documents. Concededly, this action did not seek to benefit all participants and beneficiaries of an ERISA plan nor did it seek to resolve a significant legal question regarding ERISA. However, the mere fact that Mr. Porcellini sought to enforce legal rights provided under a federal statute should not weigh against him even where the net effect of the action is to give Mr. Porcellini a "windfall." When Mr. Porcellini first engaged legal counsel to assist him in procuring his employee benefits and the necessary documents to verify those benefits, he obviously had not received either. Thereafter, he received the amounts to which he was entitled and ultimately he received the documents to enable him to verify the amounts received. These were obtained, however, only after extensive efforts by counsel. The fact that these documents were furnished to Mr. Porcellini does not pretermit the administrator's statutory obligation to furnish those documents in a timely manner. Therefore, I conclude that Mr. Porcellini's commencement of this action after he had received the requested documents does not weigh against the statutory award of fees. Clearly, it should not have been necessary for Mr. Porcellini to have an attorney, at his own expense, to obtain that which the law plainly and unambiguously grants him. An award of attorney's fees in this case

may help to avoid other beneficiaries in the future from being placed in a similar situation. To the extent that this Discussion section encompasses Findings of Fact and Conclusions of Law not contained under those respective headings, the same shall be deemed additional Findings of Fact and Conclusions of Law.

## IV.  Conclusions of Law

1. This court has jurisdiction over the parties and the subject matter and venue is proper in this district.

2. On April 2, 1982, Mr. Porcellini, through his counsel, made a proper written request to William G. Strassheim for information required to be furnished under 29 U.S.C. §§ 1024 & 1025.

3. Strassheim Printing Co., Inc. was at that time and remains, the administrator of the Strassheim pension trust.

4. The written request to William G. Strassheim satisfied the statutory requirement that a written request be made to the plan administrator since William G. Strassheim was an employee of the Strassheim Co. at that time, albeit semi-retired.

5. The response to plaintiff's request was not tendered until July 1, 1982, in violation of 29 U.S.C. § 1132(c).

6. The Strassheim Printing Co., Inc., as administrator of the pension trust, is personally liable to Mr. Porcellini in the amount of $25.00 per day from May 2, 1982, which is thirty (30) days after the request was properly made, to July 1, 1982, the date that the requested documents were delivered, being sixty (60) days for the sum of $1,500.00.

7. The Strassheim Printing Co., Inc., as administrator of the pension trust, is liable for plaintiff's attorney's fees pursuant to 29 U.S.C. § 1132(g).

8. No proper written request was ever made upon the administrator of the profit-sharing trust, and no penalty award is made as to the profit-sharing trust.

## ORDER

AND NOW, this 26th day of September, 1983, it is ORDERED, upon the Findings of Fact, Conclusions of Law and Discussion set forth in the opinion filed contemporaneously herewith, that judgment is entered in favor of the plaintiff and against the defendant Strassheim Printing Co., Inc., in the amount of $1,500.00 representing $25.00 per day from May 2, 1982 to July 1, 1982, pursuant to 29 U.S.C. § 1132(c).

IT IS FURTHER ORDERED that plaintiff is entitled to reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g). Plaintiff shall submit, within fifteen (15) days of the date of this Order, a petition for counsel fees together with a detailed affidavit of the amount of hours devoted to this action and the hourly rate requested in accordance with the precepts enunciated in *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corp.* (Lindy I), 487 F.2d 161 (3d Cir.1973), and *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corp.* (Lindy II), 540 F.2d 102 (3d Cir.1976) (en banc). Defendants shall have two weeks from the date of the submission of the petition for counsel fees to file any appropriate response or objection, if any.