John F. TRACEY, Jr.

v.

HEUBLEIN, INC.

Civ. No. H–90–936 (AHN).

United States District Court,
D. Connecticut.

Sept. 23, 1991.

Janet Arterton, Garrison, Silbert & Arterton, New Haven, Conn., for plaintiff.

Felix Springer, Day, Berry & Howard, Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS

NEVAS, District Judge.

In this one-count action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, John F. Tracey, Jr. ("Tracey") sues his former employer, Heublein, Inc. ("Heublein"), for the recovery of certain pension plan benefits. Heublein now moves to dismiss the substituted complaint. For the reasons that follow, the court grants Heublein's motion to dismiss.

### I. *Applicable Standards*

When considering a motion to dismiss the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Corcoran v. American Plan Corp.,* 886 F.2d 16, 17 (2d Cir.1989). Dismissal is not warranted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Patton v. Dole,* 806 F.2d 24, 30 (2d Cir. 1986). "The issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.1978), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). Thus, the question for the court to decide is "whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiff's claims." *De La Cruz,* 582 F.2d at 48.

### II. *Background*

Tracey is a participant in the Lifetime Compensation Plan of Heublein, Inc. ("the Plan") within the meaning of 29 U.S.C. § 1002(2)(B)(7). On March 3, 1989, Tracey orally requested from Heublein information concerning his total accrued pension benefits under the Plan. Tracey made the request because he was considering participating in Heublein's downsizing voluntary termination program.[1] In response, in

---

**1.** This program is formally entitled the Salary and Benefit Continuation Program ("SBC Pro-    gram").

handwritten form on March 6, 1989, and in typewritten form on March 13, 1989, Heublein stated that Tracey's pension benefits totalled a lump sum of $194,271, payable on May 1, 1990, and monthly pension benefits commencing after May 1, 1990 at the rate of $832.98 monthly for life, subject to changes in compensation, social security and rates of interest. When Heublein provided this information to Tracey it had available "all information necessary to have made a correct and accurate calculation, except for future changes in compensation, social security and rates of interest." Substituted Compl., ¶ 13.

On March 15, 1989, Tracey signed an agreement pursuant to the SBC Program. Tracey's agreement included severance pay.

On April 5, 1989, Tracey submitted a written request to Heublein for additional benefits information. Although the request, and Heublein's response, made reference to Heublein's March 13, 1989 letter concerning Tracey's pension benefits, Heublein's response did not provide any information that changed or corrected the information provided in the March 13, 1989 letter.

On April 27, 1990, Heublein notified Tracey that the pension benefits information it provided Tracey in March 1989 was erroneous. Instead of a $194,271 lump sum and $832.98 per month, Tracey was to receive a $118,127 lump sum and $625.00 per month. The corrected benefits information was not based solely on changes in compensation, Social Security or rates of interest. The March 1989 benefits information misled and misinformed Tracey. Tracey concluded his employment with Heublein on April 30, 1989.

Tracey now claims he is entitled to either $100 per day from March 3, 1989 through April 27, 1990, or benefits in accordance with Heublein's March 6 and March 13, 1989 communications to him.

### III. *Discussion*

Heublein's primary argument in support of its motion to dismiss is that Tracey has no claim under 29 U.S.C. § 1025(a) ("section 1025(a)") because he made no written request for information. In response, Tracey contends that liability under section 1025(a) should be imposed in the absence of a written request because there is an adequate written evidentiary basis for concluding that a request was made. Although the court finds logical appeal to Tracey's argument, the court agrees with Heublein.

Section 1025(a) of ERISA states:

Reporting of Participant's Benefit Rights. (a) Statement furnished by Administrator to Participant and Beneficiaries. Each administrator of an employee pension benefit plan shall furnish to any plan participant or beneficiary who so requests in writing, a statement indicating, on the basis of the latest available information—(1) the total benefits accrued, and (2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.

29 U.S.C. § 1025(a). Thus, a plan participant or beneficiary—here Tracey—must make a request in writing for the specific information delineated in the statute. The court notes that section 1025(a) requires the Administrator—here Heublein—to "furnish" certain information upon a written request. If, however, the Administrator "fails or refuses to comply with" the request, the participant or beneficiary may turn to 29 U.S.C. § 1132(c) ("section 1132(c)") for relief.

Section 1132(c) provides:

(1) Any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

**728**

Tracey contends, and Heublein agrees, that Congress imposed the requirement of a written request in order to provide reliability that the specific information available pursuant to section 1025(a) indeed has been requested. The written requirement thus serves an evidentiary purpose; the written request establishes (1) the information requested and (2) that the request was made. Here, Tracey concludes that the concern for reliability is satisfied by Heublein's written acknowledgement that a request was made.[2] The court disagrees for two reasons.

### A. The Case Law

First, although the court could find only two cases in which the writing requirement of section 1025(a) is addressed, that precedent supports Heublein's position. In *Porcellini v. Strassheim Printing Co., Inc.*, 578 F.Supp. 605 (E.D.Pa.1983), the court issued an opinion and order following a court trial in an ERISA action. There, Porcellini was a participant and beneficiary in pension and profit-sharing trusts. Porcellini made repeated requests for information relating to the amount of money which had accumulated in the trusts on his behalf. He contended that his employer failed to deliver the information he requested. This failure, he argued entitled him to recovery under section 1132(c). His employer argued that section 1132(c) was inapplicable because Porcellini himself "failed to comply with the statute's requirement that requests for such information be made *in writing* and directed to the *plan administrator.*" *Porcellini*, 578 F.Supp. at 611 (emphasis in original). The court held:

I find that the plaintiff has proven by a preponderance of the evidence that, at least as to the pension trust, a request was properly made in writing to the plan administrator in accordance with the statute.

It is clear that up until December of 1981, Mr. Porcellini had merely made *oral* requests . . . for a statement indicat-

ing the total benefits accrued in his pension and profit-sharing trusts and the documents which would enable him to verify those amounts. Although neither of the summary plan descriptions for the pension and/or profit-sharing trusts requires requests for information from the plan administrator to be made in writing, this requirement is expressly provided in the statute. Since plaintiff is invoking the punitive sanctions of ERISA for technical violations of the statute, he must establish that he has complied with the statutory prerequisites.

*Porcellini*, 578 F.Supp. at 611 (emphasis in original and footnote omitted).

In *Anderson v. Mortell*, 722 F.Supp. 462 (N.D.Ill.1989), the participants in a profit sharing plan brought an action against the former and present trustees of the plan alleging a variety of ERISA violations. In count three of the complaint, the plaintiffs alleged that the defendants breached their fiduciary duties by failing to satisfy certain reporting and disclosure requirements set forth in sections 1024 and 1025. In its opinion and order following a court trial, the court first observed that sections 1024 and 1025 impose duties only on plan administrators, not plan trustees. Nevertheless, the court went on to hold:

Moreover, even if the [defendants] were plan administrators, plaintiffs would not be entitled to the damages they seek for the alleged violations of sections [1024 and 1025].... [Section] 1132(c), the only provision in ERISA which allows plan participants to recover money (up to $100 per day) for violations of ERISA's reporting and disclosure requirements, applies only where plan administrators have refused to comply with a request for information. In the instant case, it is undisputed that plaintiffs did not make any written request upon the Plan administrator for the documents they now claim they had a right to review. Therefore, plaintiffs cannot recover under sections [1024 and 1025] of ERISA. Accordingly,

---

**2.** The court notes that Tracey fails to cite a single case in which the written requirement set forth in Section 1025(a) was waived. Instead,

Tracey cites general rules of statutory construction to support his position.

the court finds in favor of [the defendants] ...

*Mortell,* 722 F.Supp. at 473 (citations omitted).

The reasoning set forth in both *Porcellini* and *Mortell* is sound and directly applicable to the present action, since, in his substituted complaint, Tracey asks the court to impose the punitive sanctions of section 1132(c) for technical violations of ERISA.[3] Accordingly, the court declines to adopt Tracey's broad reading of section 1125(a), and, instead, follows the examples of *Porcellini* and *Mortell.*

B. Statutory Interpretation and Congressional Intent

Second, the court declines to tinker with ERISA's complex regulatory scheme.[4] ERISA has been referred to as a "comprehensive and reticulate" legislative scheme designed to promote the integrity of this country's private pension plans and to protect the vested expectations of plan participants and beneficiaries. *See Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980); *see also Pompano v. Michael Schiavone & Sons, Inc.,* 680 F.2d 911, 914 (2d Cir.), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982) ("ERISA's purpose is to secure guaranteed pension payments to participants by insuring the honest administration of financially sound plans."). By adopting section 1025(a) Congress has clearly manifested an intent to make plan participants or beneficiaries make requests in writing.[5] Congress has spoken. Thus, the court construes the language of section 1025(a) to give effect to legislative intent. Accordingly, by refraining from exercising what it would term excessive judicial interference with a highly technical statute, the court attempts to further the goals of uniformity and predictability of the law.

### Conclusion

For the foregoing reasons, the court grants Heublein's motion to dismiss.

SO ORDERED.

---

**3.** The court bears in mind the United States Supreme Court's holding that, as a penalty provision, Section 1132(c) must be strictly construed, *see Ivan Allen Co. v. United States,* 422 U.S. 617, 626–27, 95 S.Ct. 2501, 45 L.Ed.2d 435 (1975); *Fisher v. Metropolitan Life Insurance Co.,* 895 F.2d 1073, 1077 (5th Cir.1990).

**4.** The Second Circuit, in *Building Trades Employers Assc. v. New York State Teamsters Conference Pension and Retirement Fund,* 761 F.2d 115, 117 (2d Cir.1985), held that "[a]s a general rule federal courts should refrain from interfering with the administration of a pension plan unless its trustee or administrator has acted in an arbitrary or capricious manner."

**5.** *See* H.R.Rep. No. 533, 93d Cong., 1st Sess. 12 (1973), *reprinted in* 1974 U.S.Code Cong. & Admin. News 4639, 5042. Furthermore, the use of the word "shall" is mandatory in statutory construction in the absence of any contrary intention expressed in the statute. C. Sands and N. Singer, 2A *Sutherland Stat. Const.* § 57.03 at 643–44 (4th ed. 1984).