Sharon **LIDOSHORE**, Plaintiff,

v.

**HEALTH FUND 917, Empire Blue Cross and Blue Shield, sued herein as Empire Blue Choice, Defendants.**

**No. 97 Civ. 1656(HB).**

United States District Court, S.D. New York.

Feb. 23, 1998.

---

Sharon Lidoshore, East Brunswick, NJ, pro se.

Daniel T. Campbell, Floral Park, NY, for Health Fund 917.

Jeffrey D. Chansler, New York City, for Empire Blue Cross and Blue Shield.

### OPINION AND ORDER

BAER, District Judge.

Defendant Health Fund 917 (the "Fund") moves for summary judgment on all five causes of action. Defendant Empire Blue Cross & Blue Shield ("Empire") moves for summary judgment on the first and fourth cause of action brought by the Plaintiff. The Plaintiff, proceeding pro se, cross-moves for summary judgment on all five causes of action. For the reasons discussed below, Empire's motion is GRANTED, the Fund's motion is GRANTED in part and DENIED in part, and the Plaintiff's motion is GRANTED in part and DENIED in part.

### I. Background

The Plaintiff commenced this lawsuit pursuant to the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"). Originally, the Plaintiff brought this action in New York County Civil Court in February 1997, attempting to collect a medical benefits claim. One month later, the Defendants removed the case to Federal District Court. Thereafter, the Plaintiff amended her complaint to allege that the Defendants also violated several of ERISA's procedural requirements.

The Fund is a multi-employee welfare benefit plan administered jointly by labor and management trustees (the "Trustees"). Empire is a New York corporation engaged in the business of selling and administering group health insurance. Frank Lidoshore, the Plaintiff's husband, is employed by Interstate Poultry, an entity that contributes monthly to the Fund in order to secure medical benefits for its employees under a plan entitled Group 6HO. As a result of her marriage to Frank Lidoshore, the Plaintiff is a beneficiary of the Group 6HO plan. The Fund maintains and provides medical benefits for Group 6HO members and their beneficiaries through a contract with Empire.

The gravamen of this dispute is based on a 1993 decision by the Trustees to follow the recommendation by their medical consultants that Group 6HO benefits should be reduced. This decision resulted in the elimination of coverage for well-baby care. Approximately two years later, in March 1995, the Plaintiff gave birth to a baby boy, Harrison, and incurred a medical bill totaling $1,099, resulting from Harrison's stay in the hospital nursery. Thereafter, the Plaintiff submitted this medical bill to Empire, which the Defendant declined to pay, contending that the Group 6HO plan did not cover routine nursery care.

Following this denial, the Plaintiff sent a letter dated September 11, 1996 to Dr. De-Carvalho, an Empire employee, requesting a copy of the Group 6HO contract between the Fund and Empire.[1] Def.'s Ex. J. The Fund also received a copy of this letter. Additionally, in the letter to Dr. DeCarvalho, the Plaintiff appealed the denial of her claim. Empire, however, upheld the decision not to pay the medical bill in a letter dated October 23, 1996. In subsequent correspondence, the Fund explained the reasons for the denial of the Plaintiff's claim when responding to letters from Mr. and Mrs. Lidoshore.

On these facts, the Plaintiff advances five causes of action: (1) against the Fund and Empire, alleging that the Defendants improperly declined to pay the Plaintiff's claim for routine nursery care; (2) against the Fund, for failure to provide an accurate summary plan description; (3) against the Fund, for failure to provide an important plan document following a written request; (4) against the Fund and Empire, for offering an inadequate explanation of the reasons for denying her claim, failing to appraise her of the appeal remedies available, and not providing a full and fair review; and (5) against the Fund, for failure to discharge its fiduciary duties. The Plaintiff also seeks costs and expenses.

## II. Discussion

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact that prevent a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson,* 477 U.S. at 248), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). When determining how a reasonable jury would decide the issue, the court resolves all ambiguities and draws all inferences in favor of the nonmoving party. *See Aldrich,* 963 F.2d at 523.

### A. Denial of Benefit

The Plaintiff alleges that the Defendants improperly declined to pay the medical expenses she incurred as a result of her newborn baby's routine stay in the hospital nursery. Consequently, the Court is called upon to determine the validity of the Plaintiff's benefit claim, pursuant to ERISA § 1132(a)(1)(B). A denial of benefits challenged under § 1132(a)(1)(B) is "reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where discretionary authority is provided the Court must review the challenge on an arbitrary and capricious standard. *See O'Shea v. First Manhattan Co. Thrift Plan & Trust,* 55 F.3d 109, 112 (2d Cir.1995).

Here, both the plan administrator, the Fund Trustees, and a plan fiduciary, Empire, were conferred discretionary authority. The Trust Agreement governing the establishment and administration of the Fund gives the Trustees the power "[t]o enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Welfare Fund and to do all acts as they, in their discretion may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto and on the employees involved." Emmons Aff. ¶ 18. Empire's discretionary authority is derived from its contract with the Fund, which provides that Empire "may develop or adopt standards which describe in more detail when [Empire] will or will not make payments ... [and Empire] shall have all the powers necessary and appropriate ... to construe this Contract [and] to determine all questions arising under this Contract...." Def.'s Ex. C-A, ¶ H p. 51. Since these provisions confer discretionary authority to determine eligibility and construe the terms of the Group 6HO

---

1. While Mr. Lidoshore actually authored this letter, he sent it on behalf of his wife.

plan, the Court must apply the arbitrary and capricious standard when reviewing the denial of the Plaintiff's claim.

Under this standard, the scope of review is narrowly circumscribed. *See O'Shea,* 55 F.3d at 112. Accordingly, the Court is not free to substitute its own judgment for that of Empire or the Fund Trustees. *See Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995). Moreover, "[w]here it is necessary for a reviewing court to choose between two competing yet reasonable interpretations ... th[e] Court must accept that offered by the administrators." *Id.* at 443. Given these parameters, this Court must first determine whether each sides' interpretation of the benefits offered by the Group 6HO plan is reasonable. If both interpretations are reasonable, the one offered by the Defendants must be accepted. Adhering to this test, as I must, this Court reluctantly concludes that the Defendants elimination of well-baby coverage included routine nursery care and therefore Empire and the Fund Trustees properly denied the Plaintiff's claim for the $1,099 medical bill.

There is no dispute that the Fund eliminated well-baby coverage in 1993. However, the Plaintiff contends that routine nursery care remains a covered medical expense. In support of this contention, the Plaintiff notes that in a rider to a contract between the Fund and Empire,[2] routine nursery coverage is not included in the description of well-baby care benefits. Pl's Ex. W. Quite to the contrary, routine nursery care is listed under an article entitled "Inpatient Hospital Benefits." *Id.* Well-baby care is listed separately under an article entitled "Medical Benefits." *Id.* Given this delineation the Plaintiff argues that it is reasonable to conclude that routine nursery care is a medical expense distinct from well-baby coverage. After all, the Plaintiff concludes, if routine nursery care naturally fell within the umbrella of well-baby coverage, it would not have been described in this rider as a separate benefit.

Unfortunately, perhaps, this is not the end of the required analysis. I must then determine whether the interpretation offered by

the Defendants is reasonable. *See Pagan,* 52 F.3d at 443. In the initial letter denying Mrs. Lidoshore's claim, Empire reasons that the Group 6HO contract "provides hospital coverage for the newborn only for an illness or injury or for nursery care for a premature infant requiring incubator care or weighing less than 5.5 pounds." Def.'s Ex. D–3. Presumably, if a newborn satisfies one of these conditions, he or she cannot be classified as a well-baby. There is no dispute that the Plaintiff gave birth to a "healthy" newborn who required only a routine nursery stay. Def.'s Ex. J. As such, the Defendants argue that the Plaintiff does not have a valid claim since the Fund Trustees eliminated well-baby coverage in 1993. The Court finds this interpretation of the Group 6HO plan reasonable. Seemingly, if a newborn is not afflicted with an illness, injured, hooked up to an incubator, or underweight—conditions outlined in the claim denial letter—then he or she is a well-baby, and thus not covered under the Group 6HO plan.

Furthermore, Empire contends that interpreting routine nursery care as within the elimination of well-baby coverage is consistent with at least two other provisions in the Group 6HO contract. First, the Plaintiff's newborn, as an independent beneficiary, is subject to the express contractual condition that "hospitalization [i]s medically necessary for the care or treatment of the [c]overed [p]erson's condition, illness, or injury." Def.'s Ex. C–A p. 19. Second, according to Empire, the denial is also consistent with the contractual limitation on paying benefits for a hospital stay that, in the Defendant's judgment, is "not needed for proper medical care." Def.'s Ex. C–A p. 35.

Taken together, the intuitive appeal of the Defendants contention that a healthy newborn requiring only routine nursery care is a well-baby, and the fact that the denial of coverage is consistent with other provisions in the Group 6HO contract, lead this Court to conclude that the interpretation offered by the Defendants is reasonable and the Defendants' motions for summary judgment are granted, while the Plaintiff's motion is denied.

2. This rider relates to a contract other than the one at issue in this litigation.

### B. *Accuracy of Summary Plan Description*

██ A summary plan description ("SPD") is a written summary of the provisions of an employee benefit plan. The SPD must be "written in a manner calculated to be understood by the average plan participant" and "sufficiently accurate and comprehensive to reasonably appraise such participants of their rights and obligations under the plan." *See Becker v. Eastman Kodak Co.*, 120 F.3d 5, 7–8 (2d Cir.1997) (quoting 29 U.S.C. § 1022(a)(1)). Nonetheless, the SPD need not " 'anticipate every possible idiosyncratic contingency that might affect a particular participant's or beneficiary's status.' " *Id.* at 9 (quoting *Lorenzen v. Employees Retirement Plan of the Sperry & Hutchinson Co.*, 896 F.2d 228, 236 (7th Cir.1990)). Where the SPD is inaccurate and inconsistent with plan terms, the trustees or administrators may be estopped from enforcing the inconsistent plan terms upon a showing of reliance or prejudice by the participant. *See Aiken v. Policy Management Systems Corp.*, 13 F.3d 138, 140–42 (4th Cir.1993).

██ The Plaintiff argues that an average plan participant would not understand that routine nursery care is no longer covered, when reading the SPD in conjunction with the Fund's material modification letter of July 9, 1993.[3] This letter states that coverage for well-baby care will not be provided effective September 1, 1993. Def.'s Ex. G. As discussed earlier, the Defendants contend that payment for routine nursery care was terminated upon the elimination of well-baby coverage. However—as the Plaintiff notes—

under the heading "Maternity benefits" the SPD states that "routine nursery care while the mother is confined to the hospital" is provided if the participant is covered for maternity care and has "family coverage." Def.'s Ex. L p. 8 It seems, then, that the SPD is misleading, since it suggests that routine nursery care, under certain circumstances, is in fact a covered expense under the category of maternity benefits. The ambiguity of the SPD is compounded by the absence of any reference to the elimination of maternity benefits or routine nursery care in the July 9, 1993 material modification letter. Def.'s Ex. G.

Curiously, the Fund fails to address this inconsistency, instead stating conclusively that there is no dispute as to the SPD's accuracy. That is not an adequate response. However, summary judgment in the Plaintiff's favor is inappropriate because the papers fail to disclose, among other things, whether the Plaintiff is a beneficiary of "family coverage," was confined to the hospital during her son's routine nursery stay, and whether there is "maternity care" coverage.[4] The motions for summary judgment made by the Plaintiff and the Fund are therefore denied, and the issue of the SPD's accuracy is reserved for trial.[5]

### C. *Failure to Provide Requested Contract*

██ The Plaintiff asks this Court to impose a $100 per day fine because the Fund allegedly failed to provide her with a copy of the Group 6HO contract, following a written request, in violation of 29 U.S.C. § 104(b)(4).[6]

---

**3.** The Plaintiff also argues that the Fund breached a fiduciary duty to the Plaintiff as a result of the allegedly inaccurate and misleading SPD and material modification letter. The administrators of an ERISA plan have a fiduciary obligation to provide complete and accurate information regarding plan benefits. *See Becker v. Eastman Kodak Co.*, 120 F.3d 5, 10 (2d Cir.1997). Since the Plaintiff's breach of fiduciary claim is linked to her assertion that the SPD is inaccurate, the Court will reserve judgment on this cause of action until the inaccuracy of the SPD is resolved.

**4.** There is also an issue regarding whether the SPD in question, which is a 1984 edition, is the most current one available to plan participants. Presumably it is, since this document is the only SPD referred to by both parties.

**5.** Although the Plaintiff requested a jury, it is now well-established in this Circuit that there is no right to a jury trial in an action brought pursuant to an ERISA statute. *See Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1258 (2d Cir.1996).

**6.** There are two letters that might satisfy the written request requirement. The Plaintiff argues that a letter sent to the Fund on or about November 7, 1996 served as a request for documents. Def.'s Ex. K. The Court disagrees. The only statement in that letter that can possibly be cast as a document request is the following: "Please tell me what I am supposed to do now." *Id.* Clearly, this statement does not satisfy the request requirement.

This Section requires that an administrator of an employee benefit plan furnish—upon written request—a copy of the summary plan description, the latest annual report, any terminal report, the bargaining or trust agreement and any relevant contracts. *See* 29 U.S.C. § 1024(b)(4). An administrator who fails or refuses to comply with such a request may be held personally liable to the participant for an amount up to $100 per day. 29 U.S.C. § 1132(c)(1). The imposition and amount of any fine is committed to the sound discretion of the Court. *See Pagovich v. Moskowitz*, 865 F.Supp. 130, 137 (S.D.N.Y. 1994).

I must first decide, however, whether the Plaintiff made a valid written request. On or about September 11, 1996, the Plaintiff sent a letter to Dr. DeCarvalho, an Empire employee, requesting a copy of the Group 6HO contract between the Fund and Empire. Def.'s Ex. J. The Plaintiff also copied Gloria Williams, an administrator at the Fund. There is no dispute that the Fund received this letter and that the Plaintiff never received a copy of the contract. Consequently, the Plaintiff contends that the Fund violated § 104(b)(4).

The Fund, on the other hand, contends that they were not obligated to furnish a copy of the contract to the Plaintiff because her husband requested this document from Empire, who is not the plan administrator. Moreover, the Fund argues that it had no way of knowing that Empire never sent the contract, since in subsequent correspondence with the Fund the Plaintiff never complained about not receiving this document. Finally, the Fund asserts that a recent seventh circuit decision, *Verkuilen v. South Shore Building and Mortgage Co.* 122 F.3d 410, 411–12 (7th Cir.1997) [hereinafter *Verkuilen*], requires dismissal of the Plaintiff's claim.

Notwithstanding these arguments, this Court concludes that the Fund violated § 104(b)(4) by failing to provide the Plaintiff with a copy of the contract. Several reasons compel this conclusion. To begin with, since the Plaintiff copied the letter requesting the contract to a Fund official responsible for administering the benefit plan, the Defen-

dant had notice that Mrs. Lidoshore sought this document. The Fund points out in its motion for summary judgment that § 104(b)(4) requires that the participant send the written request to the plan administrator, here the Fund Trustees. Therefore, the Fund knew, or should have known, that Empire had no obligation to provide the Plaintiff with the contract. Consequently, the Fund, as the entity ultimately responsible for the administration of the benefit plan, should have, at the very least, determined whether Empire had complied with the document request and upon learning that it had not, sent the contract to the Plaintiff.

In essence, the Fund seeks to avoid liability simply because the Plaintiff failed to address the letter to Ms. Williams, a plan administrator, and instead carbon copied her on the bottom of the correspondence. This hyper-technical argument is not persuasive, and has often been rejected by other courts. *See Porcellini v. Strassheim Printing Co., Inc.*, 578 F.Supp. 605, 611 n. 1 (E.D.Pa.1983); *see also Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1302 (3d Cir.1993) (failure to advise plaintiff about a broader class of benefits could constitute a fiduciary breach despite the limited nature of the participant's inquiry); *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C.Cir.1990) (rejecting argument that plan fiduciary had no obligation to provide information about benefit option not specifically requested by the participant). In *Porcellini*, the defendants argued that the participant failed to make a proper written request to the plan administrator because he addressed the letter containing the request to a person who had recently left the position. *Porcellini*, 578 F.Supp. at 611 n. 1. Judge VanArtsdalen rejected this argument and reasoned that the request sought information that the participant had been entitled to obtain. *Id.* The court also noted that the letter was received by an employee of the plan administrator. *Id.* Similarly, Mrs. Lidoshore was entitled to a copy of the contract.

Finally, the only case the Fund cites to support its argument, *Verkuilen*, is distinguishable. In *Verkuilen*, the Seventh Circuit held that a complaint and interrogatory

could not be treated as an ERISA demand for documents, reasoning that the defendant should not be made "to guess whether to use the approach of ERISA or the Federal Rules of Civil Procedure" when responding to litigation requests. *Verkuilen*, 122 F.3d at 411. Here, no such daunting task confronted the Fund Trustees. Rather, they faced one simple dilemma: find out whether Mrs. Lidoshore had received the contract from Empire, or ignore her request. This Court concludes that requiring the Fund Trustees to make the inquiry, and not ignore the Plaintiff's request, is consistent with their responsibilities as a fiduciary and plan administrator. The Fund Trustees chose not to ask Empire whether it sent the document, and as a consequence, the Plaintiff never received the contract she requested. Therefore, the Court concludes that the Fund violated § 104(b)(4).

■ Given this violation, the Plaintiff seeks statutory penalties of $100 per day, pursuant to 29 U.S.C. § 1132(c). There is no consensus on the issue of whether a participant must establish prejudice and bad faith prior to receiving an award. *See Kascewicz v. Citibank*, 837 F.Supp. 1312, 1321–22 (S.D.N.Y.1993). At a minimum, however, it is clear that prejudice and bad faith on the part of the administrator are "primary factors" to be considered. *See Lacoparra v. Pergament Home Centers, Inc.*, 982 F.Supp. 213, 229 (S.D.N.Y.1997). The Court may also consider the length of the delay and the number of requests made by the plan participant, *Id.* (citation omitted).

The Plaintiff has not attempted to prove prejudice or bad faith, and the Fund merely makes conclusory assertions on these issues. As a result, the record does not provide a sufficient basis to decide whether statutory penalties should be imposed on the Defendant and if so how much. Accordingly, I decline the Plaintiff's invitation to assess the maximum $100 per day fine and reserve this issue for trial, at which time it is hoped that the parties will assist the Court in resolving the issue.

## D. Reasons for Denial, Appeals Procedure, & Full/Fair Review

■ The Plaintiff alleges that the Defendants violated ERISA procedural requirements by offering an inadequate explanation of the reasons for denying her claim, failing to appraise her of the appeal remedies available, and by not providing a full and fair review. The beneficiaries and participants of ERISA benefit plans must be notified of the denial of their claims, in whole or in part, and be given an opportunity to seek review of the decision. 29 U.S.C. §§ 1022(b), 1133(1). Therefore, a notice refusing to pay a claim emanating from an ERISA fund must also provide specific reasons for the denial. *See* 29 C.F.R. § 2560.503–1(f). These requirements were satisfied. On August 30, 1996, Empire authored a denial letter to Mr. Lidoshore explaining why the nursery charges incurred by the Plaintiff were not covered. This letter also included the following passage:

> You or your authorized representative may request a review of this claim within 60 days by writing to the claim review coordinator at the above address giving your identification number and the claim number indicated. You may also submit any additional information and comments. We shall then review the claim and advise you in writing of the specific reasons for our decision. Def.'s Ex. I.

On December 3, 1996, the Fund sent a letter to Mrs. Lidoshore explaining that well-baby coverage had been eliminated on September 1, 1993, and informing the Plaintiff that notice was sent to the membership on July 9, 1993. Def.'s Ex. K. Taken together, the August and December letters adequately explain the reasons for the denial, and the appeals process. Consequently, this branch of the Defendants' motions for summary judgment must be granted, and the Plaintiff's motion denied.

■ The Plaintiff also alleges that it failed to receive a full and fair review, in violation of 29 U.S.C. § 1133(2). At the very least, a full and fair review requires that the fiduciary inform the participant or beneficiary of the evidence that the fiduciary relied upon and provide "an opportunity to examine

that evidence and to submit written comments or rebuttal" documents. *Grossmuller v. International Union,* 715 F.2d 853, 858 (3d Cir.1983); *see also Pesca v. Board of Trustees, Mason Tenders' District Council Pension Fund,* 879 F.Supp. 23, 25 (S.D.N.Y.1995) (ERISA requires that the participant be afforded the opportunity to submit issues and comments in writing). Here, the Plaintiff contends that she had not been invited to submit documentation. But the August 30, 1996 letter to Mr. Lidoshore states that he "may also submit [to Empire] any additional information and comments" concerning the appeal of the decision denying his wife's claim. Def.'s Ex. I. Despite the Plaintiff's contention, I find she had in fact been invited to submit documentation. Clearly, the Defendants afforded Mr. and Mrs. Lidoshore a full and fair review. Consequently, their motions for summary judgment with respect to the § 1133(2) claim are granted, and the Plaintiff's motion is denied.

### III. Conclusion

For the reasons discussed above, the Plaintiff's motion is denied with respect to the claim that the Defendants improperly declined to pay her medical bill, and with respect to the claim that the Defendants failed to satisfy all of the ERISA procedural requirements. Conversely, the Defendants' motions with respect to these claims are granted. The Plaintiff's motion is granted with respect to the claim that the Fund Trustees failed to provide her with the requested contract, and the Fund's motion is denied. Following a bench trial, this Court will decide whether a statutory penalty is appropriate and if so the amount thereof. Finally, each sides motion for summary judgment is denied with respect to the accuracy of the summary plan description. The case remains on the March 1998 trailing trial calender, with a scheduled start date of March 9, 1998.

SO ORDERED.