George DORATO, Plaintiff,

v.

BLUE CROSS OF WESTERN NEW
YORK, INC., Defendant.

No. 99CV902C.

United States District Court,
W.D. New York.

July 20, 2001.

Timothy J. Toohey, P.C. (Dennis A. Clary, Esq., of Counsel), Lewiston, New York, for Plaintiff.

Wilder & Linneball, LLP (Laura A. Linneball, Esq., of Counsel), Buffalo, New York, for Defendant.

## INTRODUCTION

CURTIN, District Judge.

Presently before the court is plaintiff George Dorato's Motion for Summary Judgment and Motion to Amend the Complaint, together with defendant Blue Cross of Western New York, Inc.'s Motion for Summary Judgment. HealthNow, Inc., doing business as Blue Cross & Blue Shield of Western New York, defends this action.

Mr. Dorato originally sued "Blue Cross Western New York" [sic] in New York State Supreme Court, County of Niagara, on September 30, 1999. Item 1, Ex. A. Claiming that he was insured under a hospital contract and medical benefits contract through his former employer, Mr. Dorato sought payment for treatment of a herniated disk on a breach of contract theory. HealthNow, which received the summons and complaint on October 13, 1999, Item 1, ¶ 4, timely removed to this court on November 12, 1999. Item 1. On January 25, 2001, plaintiff filed a Motion for Summary Judgment. Items 12–15. The next day, defendant filed a Motion for Summary Judgment. Items 16–18. Plaintiff filed a Motion to Amend on March 14, 2001, Item 22, recharacterizing his claims under the Employees' Retirement Income and Security Act (ERISA), 29 U.S.C. § 1132, et seq., which defendant opposed. Items 25–26.

## FACTS

Mr. Dorato had a health insurance contract ("the contract") with HealthNow, obtained through his former employer, SGL Carbon, Inc. On July 21, 1998, he stopped work, complaining of severe back pain. He was later diagnosed as having herniated lumbar discs. He underwent surgery in April 1999 and has not returned to work.

On September 12, 1998, Mr. Dorato filed a Notice of Claim with the New York State Workers' Compensation Board ("WCB"), alleging that his injury had occurred while at work on July 21, 1998. Item 14, p. 1.[1] The employer and carrier controverted the claim, having performed an investigation which cast doubt on Mr. Dorato's version of events and the compensability of his

---

1. As the exhibits attached to Item 14 are not numbered, the court has numbered the pages consecutively.

injuries. On July 28, 1998, the employer's workers' compensation carrier, ESIS, filed a C–7 Notice of Controversy with the Compensation Board. Item 14, p. 2. A Notice of Hearing indicated a hearing date of May 14, 1999, the purpose of which was to "consider Section 32 agreement" ("the Agreement").[2] The hearing actually took place on May 28, 1999. Mr. Dorato asserts that HealthNow was "placed on notice" for both the May 14, 1999 and the May 28, 1999 hearings, but did not appear. Item 14, p. 2. HealthNow disputes that it ever received any notice at all, and asserts it certainly did not receive notice by certified mail not less than eight days before the date of the hearing, as is required by 12 N.Y.C.R.R. § 300.8. Item 20, p. 12.

At the May 28, 1999 hearing, the WCB approved the Agreement between Mr. Dorato, his employer, and his employer's Workers' Compensation Carrier in the sum of $80,000.00. Item 14, pp. 6–8. The Decision of the Board, indicated on the first page of the Agreement, was that Mr. Dorato's workers' compensation "[c]laim is disallowed." *Id.* Plaintiff asserted that the Board arrived at the $80,000.00 figure "to avoid having his case established and an award made by the Compensation Board," given that Mr. Dorato's high average weekly wage at the time of his accident "would generate the maximum indemnity payments possible under New York State Law should his case be established." Item 14, p. 2. Defendant asserts that the settlement paid Mr. Dorato his "full wage benefits for the rest of his working career" and disallowed his claim insofar as medical bills were concerned. Item 20, p. 14. It is not clear what exactly the $80,000 settlement

represented. At oral argument, Dennis Clary, Esq., who represented Mr. Dorato before the WCB, stated that he did not know why the carrier offered the $80,000.00.

During the pendency of plaintiff's compensation claim, HealthNow sent statements to Mr. Dorato indicating charges for various medical services. Some of the charges referred to an "Explanation Code Summary," which noted: "Your contract excludes services eligible for Worker's Compensation. However, if the Worker's Compensation Board denies benefits, submit a copy of their decision to us for reprocessing." Item 14, pp. 11–18.

Subsequent to the denial of his Workers' Compensation claim, Mr. Dorato forwarded his medical bills to the defendant for payment. In a letter to plaintiff's counsel dated June 21, 1999, defendant denied benefits "for any medical services rendered which are related to the injury or condition as a result of this Worker's Compensation case." Item 21, Ex. A, p. 1. The letter referred to Mr. Dorato's contract, Section Ten, "Exclusions," Paragraph 3, entitled "Worker's Compensation," which explained:

> We will not pay for any injury, condition or disease if payment is available to you under a Workers' Compensation Law or similar legislation. We will not make any payments even if you do not claim the benefits you are entitled to receive under the Workers' Compensation Law.

Item 16, Ex. C, p. 23. The letter also cited Section 32 of the Workers' Compensation Law, which provided that when a claim has been filed, the claimant and employer may

---

**2.** A Section 32 Agreement refers to Section 32(a) of the Workers' Compensation Law (McKinney's, 1996), which provides that a claimant and the employer or his carrier "may enter into an agreement settling upon and determining the compensation and other benefits due to the claimant .... Such agreements, when so approved, ... shall be final and conclusive upon the claimant, the claimant[']s dependents, the employer and the insurance carrier."

sign an agreement settling upon and determining the compensation due to the claimant, and that that settlement "acts as payment of Workers' Compensation benefits and payments by [defendant] are not due and owing for services related to the injury." Item 16, Ex. D, p. 1.

As a result of HealthNow's denial of health insurance benefits, Mr. Dorato filed this suit.

## DISCUSSION

### I. Legal Standards

#### A. Standard for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party may discharge its burden by showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In turn, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). While the court construes all evidence and inferences in favor of the non-moving party, to sustain its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

#### B. Standard of Review Governing Denial of ERISA Benefits

An "employee welfare benefit plan" is defined under ERISA as any plan, fund, or program that is established or maintained by an employer to provide to employees " 'medical, surgical or hospital care or ben-efits, or benefits in the event of sickness, accident, disability [or] death,' whether these benefits are provided 'through the purchase of insurance or otherwise.' " *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), quoting 29 U.S.C. § 1002(1). Clearly, Mr. Dorato's claim for benefits under his health insurance policy falls under ERISA. In addition, plaintiff acknowledges that the contract, forming the basis for his claims against Health-Now, is part of a plan established or maintained by his former employer to provide employees with hospital and medical benefits. Item 1, ¶¶ 3, 11. And although plaintiff originally filed his complaint asserting a state claim under a breach of contract theory, by his motion to amend, he ostensibly agrees with defendant that his claim pursuant to his health benefits contract involves an employee benefit plan governed by ERISA.

■ When assessing defendant's denial of ERISA benefits, the court must first determine the proper standard of review. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that:

> a denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

■ Where the plan "confers upon a plan administrator the discretionary authority to determine eligibility, [courts] will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.' " *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995).

■ The arbitrary and capricious standard of review

is a narrow one. It is the "least demanding form of judicial review of administrative action." ... The Court looks to "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment" and whether or not the agency has put forth a "rational connection between the facts found and the choice made." ... Unless the Court uncovers evidence of bad faith or arbitrariness, it will not disturb the interpretations of the plan administrators "as long as they are consistent with the plan's terms and purpose."

*Healix Healthcare, Inc. v. Metrahealth Ins. Co.,* 1999 WL 61832 at *1 (S.D.N.Y., Feb.10, 1999) (citations omitted).

■ Denial of a claim challenged under § 502(a)(1)(B) [3] is arbitrary and capricious if the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan,* 52 F.3d at 442 (quotation and citation omitted). Substantial evidence is " 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] ... requires more than a scintilla but less than a preponderance.' " *Miller v. United Welfare Fund,* 72 F.3d 1066, 1072 (2d Cir. 1995) (quotation and citation omitted).

■ The arbitrary and capricious standard is "highly deferential to a plan administrator.... [B]etween two reasonable interpretations of the same provision [this standard] requires the court to uphold the administrator's interpretation." *Jordan v. Retirement Committee of RPI,* 46 F.3d 1264, 1271–72 (2d Cir.1995). This

deferential review will apply to both plan interpretation and factual determinations. *Kinstler v. First Reliance Std. Life Ins. Co.,* 181 F.3d 243, 251 (2d Cir.1999). It is "inappropriate in this setting for the trial judge to substitute his judgment for that of the plan administrator." *Bella v. Metropolitan Life Ins. Co.,* 1999 WL 782132 at *5 (W.D.N.Y., Sept.30, 1999).

■ In reviewing decisions of plan fiduciaries under the arbitrary and capricious standard, "district courts may consider only the evidence that the fiduciaries themselves considered." *Miller,* 72 F.3d at 1071.

## II. Argument on Summary Judgment Motions

### A. Plaintiff's Motion for Summary Judgment

#### 1. *Issue 1:* Should the denial of benefits be reviewed *de novo?*

■ The threshold issue in this case is whether the Health Benefits Contract gives HealthNow "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co.,* 489 U.S. at 115, 109 S.Ct. 948.

Dorato asserts that the disallowance of his claim was not within the discretion of the defendant, and therefore should be reviewed under the *de novo* rather than the "arbitrary and capricious" standard of review. He compares sections of the contract which contain discretionary language with the section dealing with bills payable under workers' compensation (Section 10, ¶ 3, *supra* ), the latter of which "makes no such claim of discretionary authority ."

---

**3.** ERISA § 502(a)(1)(B), codified as 29 U.S.C. § 1132(a)(1)(B) provides that a civil action may be brought by a participant or beneficiary to recover benefits due to him under the

terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Item 13, p. 2. Dorato notes that eligibility for workers' compensation benefits in any case rests with the Workers' Compensation Board. Further, Dorato argues that the defendant recognized its obligation to pay medical bills disallowed after a compensation claim is denied, as evidenced from the notices contained on the medical bills, advising that "if the Workers' Compensation Board denies benefits, submit a copy of their decision to us for reprocessing." Item 14, pp. 11–18. Both the lack of discretionary authority under the Workers' Compensation section of the contract and the obligation to pay Dorato's medical bills point to defendant's not having the discretion to disallow claims or to interpret its plan. Therefore, argues Dorato, defendant's decision to deny him benefits is not entitled to an arbitrary and capricious standard of review, but to a *de novo* standard which would mandate a decision that HealthNow is liable to pay his medical bills.

Although plaintiff is correct that the Workers' Compensation Board solely determines eligibility for benefits under the Workers' Compensation Law, eligibility for benefits under the contract is a totally different question. A review of Dorato's contract (Item 16, Ex. C) indicates that defendant reserved for itself:

> **8. Right to Develop Guidelines and Administrative Rules.** We may develop or adopt standards which describe in more detail when we will make or will not make payments under this Contract and administrative rules pertaining to enrollment and other administrative matters. We shall have all the powers necessary or appropriate to enable us to carry out our duties in connection with the administration of this Contract, including without limitation thereto, the power to conduct utilization review, the power to construe this Contract, to determine all questions arising under this Contract and to make and establish (and thereafter change) rules and regulations and procedures with respect to this Contract.

*Id.* p. 37.

Defendant asserts that "no less than sixty (60) times does the Health Benefits Contract state that HealthNow will determine issues arising under the Health Benefits Contract using Healthnow's 'sole discretion.'" Item 17, p. 8. Clearly, defendant reserved for itself complete discretion to make benefit eligibility decisions and to construe the terms of the contract. The contract also provided the defendants would evaluate a determination made by the WCB. In addition, the statement contained on plaintiff's bills regarding submission for reprocessing was a *proviso* that did not have contractual force, did not amend the contract, and did not reflect any payment obligation assumed by defendant. Thus, the "arbitrary and capricious" standard of review applies. Numerous courts have ruled that Plan language similar to that employed in the case at bar would confer discretion upon HealthNow to construe the terms of the plan. *See Jordan v. Retirement Committee of RPI*, 46 F.3d 1264 (2d Cir.1995); *Lidoshore v. Health Fund 917*, 994 F.Supp. 229 (S.D.N.Y. 1998).

2. *Issue 2:* **Does the Workers' Compensation Board "Decision"/Agreement have collateral estoppel effect on this litigation?**

Mr. Dorato asserts that defendant was served notice of the May 14, 1999 Workers' Compensation hearing, together with a copy of the Section 32 Agreement. When defendant did not appear, the hearing was adjourned until May 28, 1999, and defendant was served a copy of the notice for

the rescheduled hearing, along with another copy of the Agreement. Item 13, pp. 3–4. Plaintiff then argues that the WCB determines all issues of eligibility for compensation claims, and its disallowance of Mr. Dorato's claim "is binding with regard to all of the issues encompassed therein." *Id.*, p. 4. Plaintiff maintains that even though defendant was not a direct party to the compensation claim, it was nevertheless aware of the effect the disallowance by the WCB would have on its obligation to cover Mr. Dorato's medical bills, and that it knew or should have known that he was going to resubmit all of his medical bills. Thus, "it was incumbent upon Defendant to object to the proposed Compensation Board decision, or at least to indicate that it did not intend to be bound …." *Id.*, p. 5. This in turn "would have caused the parties to the compensation claim to reassess their positions and to possibly reframe their settlement in light of Defendant's position." *Id.*, pp. 5–6. Because defendant failed to object, it must be estopped from challenging the valid administrative decision by the WCB.

### a. Collateral Estoppel

 Collateral estoppel, or issue preclusion, prohibits the relitigation of matters that have actually been litigated or decided in an earlier action. *Zimmermann v. Harris*, 1997 WL 257478 at *2 (S.D.N.Y. May 15, 1997). "In order to raise issue preclusion, a party must show that substantially the same issue has been decided in an earlier litigation between the same parties." *Id.* (quotation omitted). One of the basic rules of American jurisprudence is that a person "cannot be bound by a judgment unless he has had reasonable notice of the claim against him and opportunity to be heard in opposition to that claim." *Hardy v. Johns–Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982) (citing 1B J. Moore, *Moore's Federal Practice* ¶ 0.411 at 1252 (2d ed.1982)). The right to a full and fair opportunity to litigate an issue is protected by the due process clause of the Constitution. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The general rule is that one must be a party to a litigation to be bound by the results of the litigation, or in privity with a litigating party. *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996).

 Collateral estoppel "applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100, 108 (2d Cir.2001) (quotation and citation omitted). In his Memorandum, plaintiff referred to *Bruker v. City of New York*, 92 F.Supp.2d 257 (S.D.N.Y.2000), which held, under New York law, that the first three criteria above triggered the collateral estoppel doctrine. He submits that all three elements were present in this case.

### i. Whether issues in both proceedings are identical and whether the issue in the prior proceeding was actually litigated and actually decided.

The issues before the Workers' Compensation Board and the issues before this court are not the same, and the issue in the prior proceeding was not actually litigated and decided. As defendant points out, it is difficult to tell what issues were in fact before the WCB, since the result was

a settlement agreement. Plaintiff has not shown that the issue of whether the plaintiff was injured at work was actually litigated before the WCB, or decided. In fact, some evidence had been received indicating that Mr. Dorato's injuries may not have been work-related. Item 14, p. 6. The Settlement Agreement states:

> The employer and workers' compensation insurance administrator, understanding the uncertainties of litigation, wish to finalize this claim with this settlement agreement. Claimant understands that should the record be fully developed with testimony, the claim may be disallowed on the theory of no accident arising in the course of employment. The parties have agreed to resolve this case pursuant to the provisions of § 32 of the Workers' Compensation Law ....

Item 14, pp. 6—7.

The issue before this court is whether, under ERISA, defendant could disallow plaintiff's claim under the contract. The issue is *not* whether plaintiff's injuries are work-related or whether he qualifies for workers' compensation benefits. Thus, the first element of issue preclusion does not apply. Although plaintiff argues that the language in the billing notices made defendant liable for Dorato's medical bills immediately upon disallowance of his workers' compensation claim, this conclusion is a *non sequitur* and does not address the question of whether the issues in both proceedings are identical. Given that the text of the Agreement reveals that little litigation, if any, actually took place, and no apparent decision was reached on the issue of whether Dorato's medical bills would be covered by workers' compensation, the second element of claim preclusion does not apply either, despite plaintiff's assertions that "Defendant's or the workers compensation carrier's ultimate

responsibility for his medical bills was finally determined by the Compensation Board in the hearing disallowing his claim." Item 13, p. 5.

### ii. Whether there was a full and fair opportunity to litigate in the prior proceeding.

Defendant was provided no full and fair opportunity to litigate in the prior proceeding, having no right or opportunity to contest the same. HealthNow was not a party to the WCB hearing, and disputes that it even received any notice of the hearings. Item 21, ¶ 12. Even if it had received notice and appeared, the law is clear that only "parties in interest" may actively participate in a workers' compensation proceeding. *Roa v. American Transit Ins. Co.*, 96 A.D.2d 609, 464 N.Y.S.2d 852 (3d Dept.1983). Parties in interest only include the employer, its workers' compensation carrier, an appropriate special fund, and the claimant or a legal representative. Commentaries, McKinney's WCL § 22, p. 262, 1993. An insurer that is not a workers' compensation insurer would not be allowed to participate. *Id. See Liss v. Trans Auto Systems, Inc.*, 68 N.Y.2d 15, 22–23, 505 N.Y.S.2d 831, 496 N.E.2d 851 (1986).

HealthNow was not in privity with either of the parties involved in the Agreement, and would have been afforded no opportunity to present evidence and cross-examine witnesses at the proceeding. In addition, settlement agreements are only binding on the consenting parties, *Madison Sq. Garden Boxing v. Shavers*, 562 F.2d 141, 144 (2d Cir.1977). As such an Agreement is, in essence, a consent decree, it does not have collateral estoppel effect. *Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000). Thus, the court finds that the due process restrictions on the collateral estoppel doc-

trine dictate that the WCB decision/agreement had no collateral estoppel effect on the present litigation.

### iii. Whether the issue previously litigated was necessary to support a valid and final judgment on the merits.

This fourth element does not apply because the court found, *supra*, that no issue was previously litigated before the Workers' Compensation Board.

Thus, the court denies plaintiff's motion for summary judgment on the basis of collateral estoppel.

### b. ERISA Preemption of Workers' Compensation Laws

HealthNow avers that collateral estoppel also does not apply because ERISA preempts the Workers' Compensation Law as it applies to employee benefit plans. Plaintiff did not respond to this argument.

In light of the conclusion above, that collateral estoppel does not apply to the WCB settlement agreement, it is not necessary to address defendant's argument that ERISA preempts New York's Workers' Compensation Laws.

## B. Defendant's Motion for Summary Judgment

### 1. *Issue 1:* Does the health benefits contract constitute an employee welfare benefit plan governed by ERISA?

Given the discussion in Section I(B) *supra*, the court finds that plaintiff's contract did constitute an employee benefit plan governed by ERISA.

### 2. *Issue 2:* Is plaintiff's state law breach of contract claim preempted by ERISA and should the complaint be dismissed?

 HealthNow argues that the health benefits contract constitutes an employee welfare benefit plan governed by ERISA. Thus, because plaintiff did not plead under ERISA but pled a state law claim for breach of contract, ERISA preempts such claims; and therefore, the complaint should be dismissed. Dorato responds by pointing to his motion to amend, whereby he seeks to remedy any deficiencies in pleading his claim for payment of health care benefits.

 Given that ERISA so completely preempts the area of benefits under employee benefit plans, "any civil complaint raising this select group of claims is necessarily federal in character." *Howard v. National Education Assn. Of New York,* 849 F.Supp. 12, 15 (N.D.N.Y.1994) (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). ERISA-based cases that only plead state law claims are routinely removed to federal court, which has jurisdiction based on ERISA's broad preemption reach. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Howard v. Gleason Corp.,* 901 F.2d 1154 (2d Cir.1990); *Holt v. Tonawanda Coke Corp.,* 802 F.Supp. 866 (W.D.N.Y. 1991). Thus, this court has jurisdiction over plaintiff's ERISA-based federal question, despite his having pled his claim as a state law cause of action. Failure to plead under ERISA is not fatal to plaintiff's claim and is not ground for dismissal.

### 3. *Issue 3:* Was defendant's denial of benefits arbitrary and capricious as a matter of law?

 HealthNow points to the Exclusions section in its contract (Item 16, Ex. C, p. 000033: Section 8, ¶ 3), where it asserts it will not pay for any injury if payment is available under Workers' Compensation; neither will it make payments

even if the insured does not claim benefits to which he/she may be entitled under the Workers' Compensation Law ("WCL"). Pursuant to that exclusion, it asserts plaintiff was not entitled to payment for treatment of his injury because payment was available under the WCL. Moreover, continues HealthNow, plaintiff was paid under the WCL when he settled his claim for $80,000.00. Although Dorato claims that his workers' compensation claim was "disallowed," it was not unreasonable to conclude, asserts HealthNow, that given the $80,000.00 settlement under the aegis of Workers' Compensation, plaintiff received available payment under the WCL for work-related injuries or, alternatively, that he did not claim benefits that he would have been entitled to under the WCL. This reading, argues HealthNow, was a rational interpretation of the contract, and must be allowed to control. HealthNow also questions Dorato's interpretation that the $80,000.00 payment was work-related for settlement purposes, but not work-related for medical treatment coverage, and plaintiff's use of that ambiguity to his advantage.

In response to this argument, plaintiff reiterates its position set forth in his summary judgment motion that since the *de novo* standard governs, defendant's motion should be denied.

Plaintiff has not shown, in any way, that HealthNow's determination that his bills were not covered by reason of the Workers' Compensation exclusion section of the contract, was irrational. Mr. Dorato received $80,000.00 in benefits under the aegis of a settlement reached between him and the employer's workers' compensation carrier, approved by the WCB. At oral argument, HealthNow argued that the workers' compensation carrier receives its premiums to assume the risk for on-the-job injuries. Ordinary health insurance

subscribers did not contract to assume the risk of medical bills for workers injured on the job. Thus, it was not irrational for HealthNow to view Dorato's injury as occurring on the job, that the settlement by the workers' compensation carrier was for work-related injuries, that payment was available under the WCL and received, and as such, that HealthNow's contract exclusion was applicable. The court agrees with defendant that it was not unreasonable for HealthNow to conclude that the $80,000.00 represented payment to plaintiff under the Workers' Compensation Law when he settled his workers' compensation claim. Given the contract's Workers' Compensation provision that HealthNow will not pay for any injury if payment is available under the WCL, HealthNow has presented a rational interpretation of the contract that, under the law, must be allowed to control.

Based on the above reasoning, defendant's motion for summary judgment is granted.

### III. Motion to Amend

 Federal Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Where it appears that granting leave to amend "is unlikely to be productive, it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (citing *Foman*, 371 U.S. at 182, 83 S.Ct. 227). Where evidence in the record taken as a whole, including allegations in the proposed amended complaint, are insufficient to prove plaintiff's allegations, amendment should be denied. *Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir.1995).

Because the court has granted defendant's motion for summary judgment on

the merits, it also denies plaintiff's motion to amend on the ground of futility.

## CONCLUSION

For the reasons provided above, plaintiff's motion for summary judgment and motion to amend the complaint are denied, and defendant's motion for summary judgment is granted.

So ordered.