16-3463-cv
*Elizabeth W. v. Empire HealthChoice Assurance, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of October, two thousand seventeen.

Present:
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> DENNY CHIN,
> > *Circuit Judges*,

---

ELIZABETH W.,

> *Plaintiff-Appellant*,

> v.                                                            16-3463-cv

EMPIRE HEALTHCHOICE ASSURANCE, INC.,
BANK LEUMI USA PLAN 15,

> *Defendants-Appellees.*

---

| | |
|---|---|
| For Plaintiff-Appellant: | PETER S. SESSIONS (Lisa S. Kantor, *on the brief*), Kantor & Kantor LLP, Northridge, CA. |
| For Defendants-Appellees: | AMANDA LYN GENOVESE (Robert S. Whitman, Seyfarth Shaw LLP, New York, NY, *on the brief*), Troutman Sanders LLP, New York, NY. |

1

Appeal from a judgment of the United States District Court for the Southern District of New York (McMahon, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Elizabeth W. ("W") appeals from the final judgment of the United States District Court for the Southern District of New York, entered on September 15, 2016, granting summary judgment to Defendants-Appellees Empire HealthChoice Assurance, Inc. and Bank Leumi USA Plan 15 (collectively, "Empire"), on W's claim to medical benefits pursuant to a health benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision.

**A. Background**

W was undergoing medical treatment for anorexia nervosa as a beneficiary of an ERISA plan that is fully insured through a group insurance policy ("Policy") issued by Empire. After unsuccessful outpatient treatment, W was admitted to Oliver Pyatt Center ("Oliver Pyatt") for a partial hospitalization program ("PHP") on May 5, 2014. Empire initially approved coverage under the Policy and thereafter continued to approve eight additional pre-certifications submitted for continued PHP treatment. After 59 days, however, a doctor employed by Empire's third-party utilization manager, Anthem UM, concluded that PHP treatment for W was no longer medically necessary. Empire thus ceased its coverage of W's PHP treatment at Oliver Pyatt beginning on July 3, 2014. W appealed the denial of coverage through Empire's review process, but three additional third-party doctors upheld the denial. W then brought suit in the

2

district court against Empire for wrongful denial of benefits pursuant to ERISA, 29 U.S.C. § 1132.

### B. Standard of Review

In this ERISA action, we review the district court's grant of summary judgment based on the administrative record de novo. *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009). Summary judgment may be granted if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* If there are no disputed material facts, "our task is to determine whether the district court correctly applied the law." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) (citation omitted).

We agree with the district court that Empire's denial of benefits is properly reviewed pursuant to the deferential arbitrary and capricious standard of review. The default standard of review for a plan administrator's underlying benefits determination is de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111–12 (1989). But if "written [ERISA] plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Hobson*, 574 F.3d at 82 (quoting *Pagan*, 52 F.3d at 441). The district court correctly noted that "magic words such as 'discretion' and 'deference'" are not necessary to confer discretionary authority. *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 251 (2d Cir. 1999) (citation omitted). The plan documents here provide Empire with broad discretionary authority by reserving to it "all . . . powers necessary or appropriate" including the "power to construe this Contract, to determine all questions arising under this Contract, and to make and establish (and thereafter change) rules and regulations and procedures with respect to this Contract." J.A. 430–31; *see also Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622–23 (2d Cir. 2008)

3

(citing power to "adopt reasonable policies, procedures, rules, and interpretations" as language that clearly confers discretionary authority); *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1269–71 (2d Cir. 1995) (citing "power to construe" and "to determine all questions" as language that clearly confers discretionary authority); *Lidoshore v. Health Fund 917*, 994 F. Supp. 229, 232–33 (S.D.N.Y. 1998) (applying arbitrary and capricious standard to identical language). W contends that "the only relevant Policy provision in this case is the definition of medical necessity." Pl.-Appellant Br. 30. But this Policy provision confirms Empire's discretionary authority by defining "medical necessity" as care that is medically necessary based on "our [Empire's] criteria, and in our [Empire's] judgment." J.A. 393; *see Krauss*, 517 F.3d at 622 (listing ability to make benefits determinations "in our judgment" as an example of "clear language" conferring discretion).

## C. Empire's Decision

Based on the record here, we also agree with the district court's determination that summary judgment was appropriate under the arbitrary and capricious standard of review. Because we agree that this standard applies, Empire's decision to deny benefits must be upheld unless Empire acted "without reason, unsupported by substantial evidence or erroneous[ly] as a matter of law." *Kinstler*, 181 F.3d at 249 (citation omitted). The record does not support such a conclusion. Empire had full discretion under the Policy to determine if a treatment was medically necessary "according to our [Empire's] criteria, and in our [Empire's] judgment." J.A. 393. Empire's criteria for medical necessity included evaluating the "most appropriate . . . level of service" for W, "consistent with the symptoms or diagnosis and treatment of [W's] condition." *Id.* Four third-party doctors evaluated W's medical records and provided explanations that were consistent with application of Empire's medical necessity criteria: Each

4

doctor denied coverage because W's "symptoms or diagnosis" improved and recommended that W should be "treated with less intensive outpatient treatment" since PHP was no longer the "most appropriate . . . level of service." J.A. 70, 75, 106–07, 349, 393.

Empire's decision to deny further coverage was also supported by substantial evidence. W presented Empire's reviewers with multiple pieces of evidence in favor of continuing PHP treatment. Although some of the evidence in favor of continued treatment conflicts with Empire's ultimate conclusion, "if the administrator has cited 'substantial evidence' in support of its conclusion, the mere fact of conflicting evidence does not render the administrator's conclusion arbitrary and capricious." *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 212 (2d Cir. 2015) (citation omitted). Empire's third-party doctors acknowledged the conflicting evidence, but also noted significant progress made by W. (Indeed, after receiving 59 days of PHP treatment, W admits that "she made consistent progress, . . . [s]he was committed to improving, and had improved while at Oliver Pyatt, . . . was 'more open' and progressing in her treatment goals[,] … she was attending programming, and her family was participating in her treatment." Pl.-Appellant Br. 35, 37.) Each of Empire's third-party doctors also noted W's steady weight gain, general compliance with treatment, and adherence to her meal plan. J.A. 70, 75, 106, 348–49.

After weighing the conflicting evidence, there was enough "evidence that a reasonable mind might accept as adequate to support" Empire's decision to deny coverage for further PHP treatment. *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010) (defining "substantial evidence" as "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requir[ing] more than a scintilla but less than a preponderance" (citation omitted)). And though we might not have

5

arrived at the same conclusion, "we are not free to substitute our own judgment for that of [Empire's] as if we were considering the issue of eligibility anew." *Hobson*, 574 F.3d at 83–84. Empire's third-party doctors did not act arbitrarily in determining that W's demonstrated progress after 59 days of treatment indicated that PHP was no longer medically necessary as the "most appropriate . . . level of service" and that W "[could] be treated with less intensive outpatient treatment." J.A. 70, 75, 106, 348–49, 393.

### D. Conflict of Interest

Finally, the district court did not err in its assessment of Empire's conflict of interest. Empire has an inherent conflict of interest because it is "an administrator [that] both evaluates and pays benefits claims." *Hobson*, 574 F.3d at 82–83 (citation omitted). Such a conflict should be considered in determining whether a plan administrator has abused its discretion in denying benefits, but the significance of the conflict decreases if "the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008) (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008)). The district court correctly concluded that Empire's claims personnel, including the third-party doctors at issue, were "walled off" because Empire subcontracts its review process to an independent company, Anthem UM.

In addition to Empire's inherent conflict of interest, W also proffered statistical evidence regarding cases reviewed by three of the third-party doctors involved in W's review process, arguing that this evidence shows the bias of Empire's third-party doctors and further establishes Empire's conflict of interest. The district court did not err, however, in concluding that the proffered material is "hardly powerful evidence that Empire's structural conflict worked against

6

[W]" given that there was no indication in the material as to whether the proffered cases bore any similarity to W's. J.A. 881. Consistent with our precedent, we "decline[] to assign any weight to a conflict of interest 'in the absence of any evidence that the conflict actually affected the administrator's decision.'" *Roganti*, 786 F.3d at 218 (citation omitted). As discussed above, Empire's decision was based on substantial evidence, and there is no basis in the record before us to determine that Empire's conflict of interest tainted its decision.

### E. Conclusion

We have considered W's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk